HORAN AND COMPANY, Plaintiff-Appellee, v. REPUBLIC INSURANCE GROUP, Defendant-Appellant.

Third District   No. 3—88—0016

Opinion filed October 20, 1988.

Gary D. Nelson, of Heyl, Royster, Voelker & Allen, of Peoria (William I. Covey, of counsel), for appellant.

David W. Stuckel, of Harvey & Stuckel, Chartered, of Peoria (Julie L. Galassi, of counsel), for appellee.

JUSTICE WOMBACHER delivered the opinion of the court:

The defendant appeals the trial court's judgment holding the plaintiff was entitled to be defended and indemnified by the defendant.

The plaintiff, Horan and Company, owned the real estate on which was located an establishment known as E.T.'s Spirits and Stuff (E.T.'s). E.T.'s requested a liability insurance policy from the Hawk Agency, Inc. (Hawk). Hawk, an independent insurance agent, is not employed by any particular company, including Republic Insurance Group (Republic), the defendant in this case. Hawk dealt directly with Republic's general agent, Insurance Management, Inc. (IMI), rather than with Republic. IMI, not Hawk, possessed the requisite authority to bind Republic to different insurance policies.

Republic issued a liquor liability policy naming E.T.'s and Horan as the insureds. The policy commenced on January 6, 1983, and expired on January 6, 1984. IMI routinely sent an insurance binder to the insureds covering the successive period from January 25, 1984, and ending on January 6, 1985. Republic sent Hawk the actual policy,

with the agreement that Hawk was to collect and forward the premiums to Republic.

On February 6, 1984, E.T.'s tendered an insufficient premium check to Hawk, which then notified Republic to cancel the policy flat, as the policy was not taken by the insured. Hawk never notified Republic or anyone else that the policy was actually to be cancelled for nonpayment of the premium.

On January 27, 1984, an allegedly intoxicated person was involved in a motor vehicle accident which is the subject of the underlying claim against the insureds under their liquor liability policy.

Republic argues the trial court erred in finding that it was bound to defend and indemnify the insureds for the accident occurring on January 27, 1984. Republic also claims that Hawk was not its agent. We reject both contentions.

It was established that IMI possessed the requisite authority to bind Republic to their insurance policies. Pursuant to this grant of authority, IMI did in fact bind Republic to this liability policy which covered E.T.'s and Horan from January 25, 1984, through January 6, 1985. On February 7, 1984, Republic, through IMI, sent the actual policy to Hawk covering the same.

At the time of the accident, the policy was in effect and had not been cancelled. The Illinois Insurance Code (hereinafter the Code) provides that insurance policies must include cancellation provisions setting forth the manner in which policies may be cancelled. (Ill. Rev. Stat. 1987, ch. 73, par. 755.11.) Without unnecessary elaboration about the cancellation provisions, it is suffice to state that the insureds were not effectively notified that this particular policy was cancelled at the time of the accident.

■ Insurance companies must be held to a strict standard with reference to termination and forfeiture of insurance contracts for nonpayment of a premium. (*Conley v. Ratayzcak* (1980), 92 Ill. App. 3d 29, 414 N.E.2d 500.) The insurer is held to two standards when cancelling a policy. The insurer must first comply with the terms contained in its own policy, and then must comply with the notice provisions of the Code. Republic's policy contained a provision whereby it could cancel the policy for nonpayment of a premium

> "only by mailing to the Insured at the last mailing address known by this company written notice of cancellation at least 10 days prior to the effective date of cancellation."

■ In addition, the Code requires that when a policy is cancelled for nonpayment of a premium, the insurer must give at least 10 days' notice of cancellation to the insured. (Ill. Rev. Stat. 1987, ch. 73, par.

755.16.) The testimony shows there was noncompliance with the terms and provisions of the policy and the Code regarding the cancellation. Without strict compliance with the cancellation provision, there could be no valid cancellation by either the insured or the insurer. (*Kerr v. Pusateri* (1965), 64 Ill. App. 2d 172, 212 N.E.2d 263.) The accident on which the underlying claim is based occurred nearly 10 days prior to the insureds tendering an insufficient check for the premium! Therefore, the policy (binder) effectively covered the insureds and the trial court was correct in finding Republic was bound to defend and indemnify the insureds.

■ Republic contends that Hawk was not the agent for Republic, rather it was the insured's agent. When an insurance broker is hired to obtain insurance for another, he exhausts his authority once the insurance is obtained. (*Holbrook v. Institutional Insurance Co. of America* (7th Cir. 1966), 369 F.2d 236.) Therefore, Hawk's authority to act as the agent for the insureds terminated when the liability policy was obtained.

■ When Hawk notified Republic to cancel the policy, it was not the agent for the insureds, but rather it was agent for Republic. Hawk did not possess any authority to cancel the policy on the insured's behalf.

■ Furthermore, Hawk and IMI maintained a relationship controlled by a producers/brokers agreement whereby Hawk was to collect the premiums from the insureds and remit them to IMI. Hawk owed Republic the usual duties flowing from an agent to a principal. Even though an agent must disclose to his principal all material facts in his possession which may affect the subject matter of his agency, the principal is chargeable with and bound by the knowledge of or all notices sent to its agent, whenever the agent is acting within the scope of its authority. (*Bull v. Mitchell* (1983), 114 Ill. App. 3d 177, 448 N.E.2d 1016.) Hawk was clearly acting within the scope of its authority when it collected and attempted to remit the premium from the insureds. When Hawk could not remit the premium to Republic, it was under a duty to so notify Republic of the same.

Based on the foregoing, the circuit court of Peoria County is hereby affirmed.

Affirmed.

HEIPLE and SCOTT, JJ., concur.